UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MILTON FAULKNER                        CIVIL ACTION

VERSUS                                 NO: 13-6813

MARLIN GUSMAN                          SECTION: R(4)

## ORDER AND REASONS

Milton Faulkner filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241.[1] He alleges that Louisiana Code of Criminal Procedure Article 334.4(A) ("Article 334.4"), which prohibits recognizance bonds and unsecured personal surety bonds for defendants charged with certain offenses, is unconstitutional on its face.[2] For the following reasons, the Court DENIES Faulkner's petition.


I.  **Background**

Faulkner was charged in state court with possession with intent to distribute cocaine and distribution of cocaine.[3] Faulkner asserts, and the State does not dispute, that before his bond hearing in state court, New Orleans Pretrial Services prepared a report indicating that he has no prior convictions and

---

[1] R. Doc. 1.

[2] *Id.* at 7, 9-11, 13-14.

[3] R. Doc. 1-1 at 82.

is in the "lowest risk category" for purposes of pretrial release.[4]

Generally, Louisiana state court judges may set either money or non-money bonds for defendants awaiting trial. La. C. Cr. P. Art. 312. Article 334.4, however, provides that "any defendant who has been arrested for any of the following crimes shall not be released by the court on the defendant's own recognizance or on the signature of any other person." La. C. Cr. P. Art. 334.4(A). The article lists eleven offenses, including "[t]he production, manufacturing, distribution, or dispensing or the possession with the intent to produce, manufacture, distribute or dispense a controlled dangerous substance."[5] *Id.*

Because Faulkner is charged with possession with intent to distribute cocaine and distribution of cocaine in violation of La. R.S. 40:967(B), the judge at Faulkner's bond hearing was prohibited from considering a recognizance or unsecured personal

---

[4] R. Doc. 1 at 5.

[5] The other offenses listed in Article 334.4 are vehicular homicide; cyberstalking, if the person has two previous convictions for the same offense; aggravated kidnapping of a child; violation of protective orders, if the person has a previous conviction for the same offense; killing a child during delivery; human experimentation; cruelty to the infirmed, if the person has a previous conviction for the same offense; operating a vehicle while intoxicated, if the person has a previous conviction for the same offense; aggravated cruelty to animals; and injuring or killing of a police animal. La. C. Cr. P. Art. 334.4(A).

surety bond. The judge set Faulkner's bond at $30,000.[6]

Faulkner filed a motion in the trial court to declare Article 334.4 unconstitutional.[7] The court heard argument and denied the motion.[8] Faulkner objected and noticed his intent to seek writs with the Louisiana Court of Appeal.[9] He filed a petition with the Court of Appeal for supervisory writs.[10] The court denied his petition without reasons.[11] He then filed a petition for supervisory writs with the Louisiana Supreme Court.[12] That court, too, denied his petition without reasons.[13]

Faulkner now petitions this Court for a writ of *habeas corpus*.[14] He argues that Article 334.4's "unique bond restriction has resulted in Mr. Faulkner being held in violation of his federal constitutional rights to procedural due process and to bail that is not excessive."[15] He apparently has been unable to

---

[6] R. Doc. 1-1 at 82.

[7] *Id.* at 20.

[8] *Id.* at 56.

[9] *Id.* at 57, 59.

[10] *Id.* at 1.

[11] *Id.* at 60.

[12] *Id.* at 61.

[13] *Id.* at 81.

[14] R. Doc. 1.

[15] *Id.* at 7.

satisfy the bond in this case. He remains in the custody of the Orleans Parish Sheriff's Office, awaiting trial.[16]

This Court has jurisdiction pursuant to 28 U.S.C. § 2241. *See Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011) ("As a pretrial detainee . . . Martinez's habeas petition is governed by § 2241."). The State concedes that Faulkner's petition is timely and that he properly exhausted his claims in state court before filing his petition for *habeas corpus*.[17]

## II. Legal Standard

Faulkner's petition is subject to *de novo* review in this Court. *See Martinez*, 644 F.3d at 242 ("[Section] 2254(d) deference never applies to habeas petitions brought by pretrial detainees under § 2241."). The question for decision is whether Faulkner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.

Faulkner argues that Article 334.4 is unconstitutional on its face under both the Fourteenth Amendment's Due Process Clause and the Eighth Amendment's Excessive Bail Clause.[18] To succeed in

---

[16] *Id.* at 1; R. Doc. 11 at 1.

[17] R. Doc. 11 at 2-4.

[18] R. Doc. 1 at 7, 9-11, 13-14. In his petition, Faulkner does not state explicitly that he brings a facial challenge. Nonetheless, his argument bears the hallmarks of a facial challenge and not an as-applied challenge. *See id.* Further, at oral argument, Faulkner's counsel confirmed that Faulkner

his facial challenge, Faulkner must establish that Article 334.4 is "unconstitutional in all of its applications," or that it lacks any "plainly legitimate sweep."[19] *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *Wash. v. Glucksberg*, 521 U.S. 702, 740 n.7 (1997) (Stevens, J., concurring)) (quotation marks removed). "In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Id.* at 449-50.

"Facial challenges are disfavored for several reasons." *Id.* at 450. First, "they raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Id.* (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)). Second, they "run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it[,]' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Id.* (quoting *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)). "Finally, facial challenges

---

challenges Article 334.4 on its face and not as applied to him.

[19] The Supreme Court has recognized a dispute among its members as to which of these two standards applies to facial challenges. *United States v. Stevens*, 559 U.S. 460, 472 (2010); *Wash. State Grange*, 552 U.S. at 449. The Court need not address this dispute in order to rule on Faulkner's petition.

threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451. It is with these principles in mind that the Court turns to the merits of Faulkner's facial challenge.

## III. Article 334.4 Does Not Violate Procedural Due Process.

Faulkner's first argument is that Article 334.4 violates procedural due process.[20] He argues that Article 334.4 "runs afoul of procedural due process because it establishes a *per se* bar prohibiting judges from granting a recognizance bond for enumerated crimes, and does so without affording the defendant any process."[21]

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "We analyze procedural due process questions using a two-step inquiry: First, we determine whether the state has deprived a person of a liberty or property interest; if there has been such a deprivation, we must determine whether the procedures relative to that deprivation were constitutionally

_____

[20] R. Doc. 1 at 8-13.

[21] *Id.* at 9.

sufficient." *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994).

Because Faulkner challenges Article 334.4 on its face, his procedural challenge succeeds only if the Court finds that Article 334.4 is procedurally inadequate in all, or nearly all, of its applications, not as applied to a particular set of defendants.[22] *See Wash. State Grange*, 552 U.S. at 449. The relevant question is whether the *procedural* scheme is facially inadequate under *Mathews v. Eldridge*, not whether it always results in substantively impermissible outcomes. *See Catron v. City of St. Petersburg*, 658 F.3d 1260, 1267-69 (11th Cir. 2011) (finding that a city trespass ordinance creating a "substantial risk of erroneous deprivation of liberty" is procedurally inadequate on its face).

The Court concludes that Faulkner's procedural due process claim fails, because Article 334.4 does not deprive defendants of a liberty interest under *Mathews v. Eldridge*. In the alternative, even if the Court were to assume that Article 334.4 implicates a defendant's liberty interest in pretrial release, the risk of erroneous deprivation of that interest is so low as to preclude the possibility of a procedural due process violation.

A.   *Article 334.4 Does Not Deprive Defendants of a Liberty Interest.*

---

[22] *See id.* at 7, 8, 9 (urging arguments applicable only to indigent defendants who are unable to post money bonds).

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Faulkner asserts that Article 334.4 implicates his liberty interest in obtaining release pending trial.[23] *See United States v. Salerno*, 481 U.S. 739, 750 (1987) (recognizing the "importance and fundamental nature" of this interest). But Article 334.4 does not mandate pretrial detention. Rather, it mandates that judges set a money bond as a condition of release for defendants charged with certain offenses. Faulkner does not argue, as he surely cannot, that judges may not impose conditions of release on defendants awaiting trial. *See Stack v. Boyle*, 342 U.S. 1, 5 (1951) ("The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty.").

Further, Article 334.4 sets no minimum bond amount. When it applies, judges may not grant non-money bonds, but they are free to set very low, even nominal, money bonds. The record shows that the state court judge who heard Faulkner's motion to declare Article 334.4 unconstitutional recognized this feature of the statute, stating that "the DA's office is right in their argument that we can set the bond as low as we want. . . . [I can] give

---

[23] R. Doc. 17 at 2.

him a bond of . . . $1,000, $500 or . . . $10."[24]

The Court finds that Article 334.4, viewed in the context of Louisiana's bail-setting procedure, does not deprive defendants of their interest in pretrial release, because it does not require judges to set bond in any amount that is likely to prevent defendants from obtaining pretrial release. Rather, it requires only that judges set bond in some amount above zero. Moreover, the Louisiana Code of Criminal Procedure directs judges to set the amount of bail "such that, in the judgment of the court . . . it will insure the presence of the defendant, as required, and the safety of any other person and the community." La. C. Cr. P. Art. 334. The Code of Criminal Procedure directs judges to consider ten factors in setting the amount of bail, including the seriousness of the offense charged, the weight of the evidence against the defendant, the defendant's previous criminal record, the defendant's ability to post bail, the danger the defendant poses to any other person or to the community, "[a]ny other circumstances affecting the probability of [the] defendant's appearance," and the type or form of bail. *Id.* A defendant charged with one of Article 334.4's enumerated offenses may argue that the statutory factors favor a low or nominal money bond in his case. If the judge agrees, she may set bond in an amount the defendant can satisfy, be it a hundred dollars or ten

---

[24] R. Doc. 1-1 at 55-56.

dollars or even ten cents. If the judge does not agree, and concludes that the defendant poses a flight risk or a danger to the community, then Article 334.4 is unlikely to have any effect, as the judge would likely set a money bond even in the absence of Article 334.4. For purposes of Faulkner's facial challenge, the Court must assume that judges will apply the statutorily mandated factors in good faith when setting bail for defendants charged with one of Article 334.4's enumerated offenses.

The deprivation Faulkner claims "is more theoretical than actual." *Broussard v. Parish of Orleans*, 318 F.3d 644, 651 (5th Cir. 2003). He has offered no hard evidence that any arrestee who would otherwise have been released on recognizance has ever been kept in jail because Article 334.4 obligated the judge to impose a money bond. *See id.* Although Faulkner apparently has been unable to satisfy the $30,000 bond imposed in this case, he offers no evidence sufficient to show that this bond is attributable to Article 334.4's money bond requirement, as opposed to other statutory factors the judge may have considered. The record indicates that the judge who set Faulkner's bond recognized, at the hearing on Faulkner's motion to declare Article 334.4 unconstitutional, that he could set bond at $1000, $500 or even $10 if he felt that it was warranted.[25] Thus, the

---

[25] *Id.* ("[A defendant] can come in and say, okay, fine I have a [possession with intent to distribute charge], but . . . [I have] no record. . . [I could find that h]e's an upstanding

Court concludes that the judge set bond at $30,000 not because Article 334.4 mandated a money bond, but because he determined that consideration of the statutory factors warranted a bond in this amount.

The Court finds that Article 334.4 does not mandate pretrial detention for any defendant and allows judges to set low or nominal money bonds as appropriate. Accordingly, the Court concludes that Article 334.4 does not deprive defendants of their interest in pretrial release such that it triggers procedural due process review under *Mathews v. Eldridge*.

B.   *The State's Procedures Are Constitutionally Sufficient.*

Even if the Court accepts, for the sake of argument, that Article 334.4 implicates a defendant's liberty interest in pretrial release, it finds no procedural due process violation, because the risk of erroneous deprivation of that interest is exceedingly low. Under *Mathews v. Eldridge*, courts consider three factors in determining whether state procedures violate due process: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;

---

citizen. He lives in the community and therefore, I'm going to give him a bond of a $1,000, $500 or . . . $10.").

and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Here, the private interest arguably affected is "the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). There is no question that this is an important interest. *See Salerno*, 481 U.S. at 750. Nonetheless, the Court finds that "any deprivation attributable to [Article 334.4] is minimal, if not non-existent." *Broussard*, 318 F.3d at 655. As discussed in Part III.A., *supra,* Faulkner has not shown that he, or any other arrestee, has been detained because of inability to post a money bond attributable to Article 334.4. *See id.* Faulkner's $30,000 bond is far greater than what Article 334.4 requires, suggesting that the judge's bail determination turned not on Article 334.4's money bond requirement but rather on consideration of the factors enumerated in Article 334. Because the Court finds that any deprivation of liberty attributable to Article 334.4 is minimal, it concludes that Article 334.4 does "not trigger any heightened level of private interest." *Id.* The first *Mathews* factor weighs only slightly in favor of Faulkner.

Turning to the second *Mathews* factor, the Court finds that the risk of erroneous deprivation is exceedingly low. As

discussed in Part III.A., *supra*, in all cases in which bail is available, Louisiana law directs judges to set the amount of bail "such that, in the judgment of the court . . . it will insure the presence of the defendant, as required, and the safety of any other person and the community." La. C. Cr. P. Art. 334. Judges are directed to consider ten factors in determining the amount of bail, including the defendant's ability to post bail, any circumstances affecting the probability of the defendant's appearance, and the type or form of bail. *Id.* When Article 334.4 applies, judges may not grant non-money bonds but are free to set very low, even nominal, money bonds as they see fit. Given these procedural protections, the Court concludes that the risk of erroneous deprivation of a defendant's interest in obtaining pretrial release is exceedingly low. In light of this statutory scheme, if a defendant charged with one of Article 334.4's enumerated offenses would otherwise be eligible for a non-money bond because he poses a minimal flight risk and danger to the community, the Court cannot presume that the judge will impose a bond so financially onerous as to deny the defendant pretrial release.

The Court finds that, on its face, Article 334.4 is unlikely to result in pretrial detention of defendants who would otherwise be eligible for personal recognizance bonds. The only circumstance in which this might plausibly occur is when the

13

defendant is unable to post even a *de minimis* money bond. In ruling on Faulkner's facial challenge, however, the Court may not "speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange*, 552 U.S. at 450. Since Article 334.4, on its face, occasions only a minimal risk of erroneous deprivation of a defendant's interest in pretrial release, the Court concludes that the second *Mathews* factor weighs strongly in favor of the State.

As to the third *Mathews* factor, the Court finds that Article 334.4 serves the State's legitimate interest in public safety. Bail in Louisiana serves two purposes: ensuring the presence of the defendant at trial, and ensuring the safety of any other person and the community. La. C. Cr. P. Art. 334. The eleven offenses enumerated in Article 334.4 involve either violent or dangerous conduct directed toward human or animal victims, or the production or distribution of controlled dangerous substances. *See* La. C. Cr. P. Art. 334.4(A). The Court concludes that the Louisiana legislature determined that these offenses are of sufficient gravity, and occasion a sufficient flight risk or risk of danger to the community, to warrant mandatory imposition of a money bond.[26] While Article 334.4 permits nominal money bonds,

---

[26] Other provisions of the Louisiana Code of Criminal Procedure prohibit recognizance or unsecured personal surety bonds for defendants charged with felonies involving firearms, domestic abuse battery and crimes of violence. La. C. Cr. P. Arts. 334.1, 334.2.

14

and therefore does not ensure that defendants charged with these offenses will be bound by any significant sum, it nonetheless signals to judges that the legislature is concerned with the potential flight risk or threat to public safety posed by these defendants. In this way, it serves the State's interest in public safety to a slight degree. At the same time, the State has no evident fiscal or administrative interest in Article 334.4's *per se* bond restrictions, since judges could easily consider the appropriateness of non-money bonds at the hearings already being held. Accordingly, the Court concludes that the third *Mathews* factor weighs only slightly in favor of the State.

Consideration of the three *Mathews* factors indicates that Article 334.4 is procedurally sufficient, primarily because the risk of erroneous deprivations is minimal. *See Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014) (noting that the second *Mathews* factor is "critical when the governmental and private interests both have weight"). The Court concludes that Article 334.4 falls within the "'great leeway' given to governments in 'protect[ing] public health and safety.'" *Bevis v. City of New Orleans*, 686 F.3d 277, 281 (5th Cir. 2012) (alteration in original) (quoting *Mackey v. Montrym*, 443 U.S. 1, 17 (1979)). Faulkner's procedural due process claim fails.[27]

---

[27] The Court notes that the federal bail statute incorporates, in all cases, either a rebuttable presumption in favor of release on recognizance or an unsecured appearance bond,

**IV.   Article 334.4 Does Not Violate the Excessive Bail Clause.**

Faulkner's second argument is that Article 334.4 violates the Excessive Bail Clause of the Eighth Amendment.[28] The Eighth Amendment prohibits bail that is excessive in light of its intended purpose. *Stack*, 342 U.S. at 5. Because Faulkner brings a facial challenge, he must show that Article 334.4 results in excessive bail "in all of its applications," or lacks any "plainly legitimate sweep." *Wash. State Grange*, 552 U.S. at 449. This he does not and, surely, cannot do. In many instances, a money bond for a defendant charged with one of Article 334.4's enumerated offenses will pass constitutional muster. Faulkner makes no showing that money bonds are necessarily excessive for all, or even a significant number of, defendants charged with these offenses. Faulkner's Eighth Amendment challenge fails.

**V.   Faulkner's Citation to *Pugh v. Rainwater* Is Unavailing.**

---

or, in certain circumstances, a rebuttable presumption in favor of pretrial detention. 18 U.S.C. §§ 3142(b), (e)(2)-(3). The statute further provides that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the [defendant]." *Id.* § 3142(c)(2). Thus, in the federal system, defendants at least may argue for non-money bonds in all cases, and it is made explicit that judges may not impose financial conditions so onerous as to prevent defendants from obtaining pretrial release. While a procedural scheme of this kind may be preferable as a matter of policy, the Court finds no authority indicating that it is constitutionally mandated.

[28] R. Doc. 1 at 13-14.

Throughout his petition, Faulkner relies substantially on dicta in the case of *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978).[29] There, the Fifth Circuit indicated that pretrial detention of an indigent defendant for inability to post a money bond, "without meaningful consideration of other possible alternatives," would violate due process, equal protection and the prohibition against excessive bail. *Id.* at 1057-58. The Court finds Faulkner's reliance on *Pugh* unpersuasive. In *Pugh*, the Fifth Circuit declined to invalidate a Florida bail rule that did not include a presumption against money bonds. *Id.* at 1058-59. The Fifth Circuit did not hold that state bail schemes must make personal recognizance bonds available in all categories of cases. *Cf. Broussard*, 318 at 650 ("[T]here is no absolute constitutional right to bail.").

Further, the dicta on which Faulkner relies addresses circumstances in which indigent defendants remain incarcerated pending trial due to imposition of money bonds. As stated in Part III.B., *supra*, the Court finds that the only circumstance in which application of Article 334.4's facial requirements will result in pretrial incarceration of a defendant who would otherwise be applicable for a non-money bond is when the defendant is unable to post even a *de minimis* money bond. This theoretical scenario may not serve as the basis for Faulkner's

---

[29] R. Doc. 1 at 8, 9, 11, 14.

facial challenge. If Faulkner, or any other defendant, can establish that after consideration of all of the statutory factors he would otherwise have been eligible for a non-money bond, and that imposition of a money bond under Article 334.4 resulted in his pretrial detention, he may be able to succeed in an as-applied challenge to Article 334.4.

## VI.  Conclusion

The Court DENIES Faulkner's petition for a writ of *habeas corpus*.

New Orleans, Louisiana, this __9th__ day of May, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE